[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
By motion for summary judgment dated March 20, 2000, defendant Brian P. Scagliola seeks judgment on all counts of plaintiff Barry E. Amos' complaint, dated November 11, 1997. Oral argument was heard by the court on October 2, 2000. For the reasons stated below, the court denies the motion.
 I. PROCEDURAL BACKGROUND
This action concerns the plaintiff's claims of negligence, nuisance and a failure to comply with the statutory duties of a landlord in violation of General Statutes § 47a-7. Amos asserts that on April 27, 1996, he was a tenant at an apartment building owned by Scagliola. (See Complaint, November 24, 1997, Count I, ¶¶ 1-2.) He claims that a defective and dangerous condition existed in the building "in that the CT Page 13331 stairway located at the side of the [premises] was in an advanced state of decay." (Complaint, Count I, ¶ 3.) Amos further alleges that while he was descending the stairway, he stepped on a tread that broke, causing him to fall through the stairway and sustain injuries and damages. (See Complaint, Count I, ¶ 4.) Amos claims that the tread broke due to its defective condition and that Scagliola knew and had reason to know of the dangerous and hazardous condition at all times material hereto. (See Complaint, Count I, ¶ 5.) Specifically, Amos alleges that Scagliola was careless, reckless and negligent in that he failed to properly inspect the stairway, failed to correct the stairs, failed to warn Amos of the dangerous condition and failed to exercise reasonable care. (See Complaint, Count I, ¶ 6.) These allegations are incorporated into Count II, alleging nuisance and likewise, form the basis for Count III concerning a violation of § 47a-7. On January 26, 1998, Scagliola filed an answer and special defenses specifically denying all three claims.
In support of the motion for summary judgment, Scagliola submitted his affidavit dated March 20, 2000, excerpts from Amos' deposition and a copy of a Rental/Lease Agreement. In response, Amos filed an objection accompanied by his affidavit. Amos' affidavit referenced attached photographs, a copy of his deposition transcript, a copy of the transcript of Scagliola's deposition and a copy of Chapter 18, Housing, of the Municipal Code of the City of Hartford. In response, Scagliola filed a reply on May 25, 2000, with three photographs annexed thereto. Amos' sur-reply followed on June 15, 2000.
 II. STANDARD OF REVIEW
Practice Book § 17-49 provides that summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital,252 Conn. 193, 201, 746 A.2d 730 (2000). "Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial." Orenstein v. Buckingham Corp., 205 Conn. 572, 574, 534 A.2d 1172
(1987).
While "the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the CT Page 13332 existence of such an issue." (Internal quotation marks omitted.) Burnhamv. Karl Gelb, P.C., 50 Conn. App. 385, 717 A.2d 811 (1998), aff'd,252 Conn. 153, 745 A.2d 178 (2000); Haesche v. Kissner, 229 Conn. 213,217, 640 A.2d 89 (1994). The opposing party must do more than merely assert the existence of a disputed issue of fact. See Burns v. HartfordHospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). Mere assertions cannot refute evidence properly presented to the court in support of a motion for summary judgment. See id. "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) Miller v. United Technologies Corp., 233 Conn. 732,751-752, 660 A.2d 810 (1995).
 III. DISCUSSION
Ordinarily, "[i]ssues of negligence are . . . not susceptible of summary adjudication." (Internal quotation marks omitted.) Fogarty v.Rashaw, 193 Conn. 442, 446, 476 A.2d 582 (1994). To succeed, Amos' negligence claim against Scagliola under Count I must be founded upon a breach of duty owed to Amos. See Neal v. Shiels, 166 Conn. 3, 12,347 A.2d 102 (1974). "Where there is no legal duty, there can be no actionable negligence. Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence." (Internal quotation marks omitted.) Nicholas v. Stop and Shop Corp., Superior Court, judicial district of Milford, Docket No. 058784 (December 3, 1998, Corradino,J.).
Possession and control of leased premises are the linchpins of premises liability claims against lessors. See Mack v. Clinch, 166 Conn. 295,296, 348 A.2d 669 (1974). Control has been defined as "the power or authority to manage, superintend, direct or oversee." (Internal quotation marks omitted.) Alderman v. Hanover Ins. Group, 169 Conn. 603, 606,363 A.2d 1102 (1975).
Generally, a tenant "takes the premises as he finds them and bears the risk of any defective conditions which are within the area under his exclusive possession and control. . . . This rule, however, does not apply to defects which are the result of faulty design or disrepair and which existed at the beginning of the tenancy, were not discoverable by the tenant on reasonable inspection, and were known, either actually or constructively to the landlord." (Internal quotation marks omitted.) Gorev. People's Savings Bank, 235 Conn. 360, 374, 665 A.2d 1341 (1995). Nor does the rule apply "where the landlord retains control of a portion of the demised premises. In such a case the landlord must use reasonable care to keep that portion of the premises in a reasonably safe CT Page 13333 condition." Mack v. Lavalley, 55 Conn. App. 150, 162, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999); Pollock v. Gampel,163 Conn. 462, 468, 313 A.2d 73 (1972).
Resolution of the issues of possession and/or control in an individual case is dependent on the parties' agreement and their actions. "No matter what the written lease may say and even if it clearly does not reserve the offending portion of the premises for the landlord's control, the landlord could still be found to be in possession and control of that portion of the premises if in fact it did actually engage in activities regarding such an area which made it clear it possessed control."Nicholas v. Stop Shop Corp., supra, Superior Court, Docket No. 058784.
Control of the premises is a question of fact, of which a lease is evidence but is not necessarily conclusive. See Panaroni v. Johnson,158 Conn. 92, 99, 256 A.2d 246 (1969). "Whether [a lessor] retained control of [an] area is essentially a matter of intention to be determined in light of all the significant circumstances." Kirby v.Zlotnick, 160 Conn. 341, 343, 278 A.2d 822 (1971). "Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case." Suarez v. DickmontPlastics Corp., 242 Conn. 255, 283, 698 A.2d 838 (1997). "[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated." (Citation and internal quotation marks omitted.) Reynolds v. Chrysler First Commercial Corp., 40 Conn. App. 725,731, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996).
Scagliola concedes that "it is unclear whether the plaintiff's occupancy of the first floor west apartment and its appurtenant stairway at the time of his fall was controlled by the provisions of the `rental lease agreement' entered into by the parties in October of 1994 or was simply an oral month-to-month lease between the parties." (Defendant's Memorandum of Law, pp. 5-6.) Paragraph 21 of the lease contained a provision by which Amos agreed to accept the "dwelling and all furnishings and appliances therein as being in good and satisfactory condition. . . ." However, that lease applied to the first floor west apartment[1] and expired by its terms on November 31, 1995. Therefore, the lease expired prior to Amos' fall in April of 1996, on the east stairs which provided access to the east apartment and after Amos moved into said east apartment on September 1, 1995. (See Amos Affidavit, ¶¶ 8, 10.) Under these circumstances, the lease terms do not definitively address the issue of control of the premises actually occupied by Amos when he fell. Rather, "whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant . . . becomes a question of fact and is a matter of intention in light of all the significant and attendant facts which bear on the issue." PanaroniCT Page 13334v. Johnson, supra, 158 Conn. 98.
The numerous questions of fact at issue concerning possession and control are reflected in Amos' affidavit. In paragraph 10, Amos claims that the east stairs lead to a common alcove/small hallway, which, in turn, leads to the east apartment. Amos termed the stairs and alcove as "common areas," since Scagliola's maintenance person used the east stairs and the alcove to replace bulbs in flood lights mounted above the top step of the stairs which lit the building's parking area. (See Amos Affidavit, ¶ 11.) Scagliola occasionally used the east stairs and maintained them by clearing snow from them in the winter. (See Amos Affidavit, ¶¶ 12, 14.) Amos also maintained that Scagliola promised Amos that he would repair railings on the east stairs after Amos pointed out problems with them. (See Amos Affidavit, ¶¶ 12, 15.) Further, Amos states that after he fell on April 27, 1996, he observed that someone "had placed new stair treads over rotten wood on the east stairs, thereby concealing the fact that the stairs had completely deteriorated." (Amos Affidavit, ¶ 18.) Amos averred that these treads were "placed on the stairs at some time in the year prior to the accident." (Amos Affidavit, ¶ 18.)
In response, Scagliola's reply termed the Amos affidavit "unsupported" and "demonstrably false." (Defendant's Reply Memorandum (Defendant's Reply), May 25, 2000, p. 2.) Without providing a supplemental affidavit, Scagliola submitted an exterior photograph which, he contends, "clearly demonstrates, the "common alcove' referred to by the plaintiff is in fact an enclosed porch or "mud room' which provides access only to the plaintiff's apartment, a circumstance which has not been contradicted by plaintiff." (Defendant's Reply, p. 6; Defendant's Reply, Exhibit A.) Scagliola's statements about the photograph are argument only and not evidence. In addition, these statements fail to obviate the questions of fact relating to possession and control raised by Amos's affidavit as discussed above. Scagliola's reply also claims that the flood lights "must be accessed by a ladder placed against the side of the building from the ground." (Defendant's Reply, p. 6.) This contention only presents another question of fact.
Scagliola's reply then cites three decisions of our Supreme Court as controlling of the outcome here. See Lewis v. Kassimer, 153 Conn. 13,15-19, 211 A.2d 837 (1965); Bentley v. Dynarski, 150 Conn. 147, 150,151-152, 186 A.2d 791 (1962); Martel v. Malone, 138 Conn. 385, 392,85 A.2d 246 (1951). None of these cases involve a motion for summary judgment. Each involve a decision after trial, where, presumably, all the relevant facts and circumstances were evaluated by the trier of fact. Indeed, in Bentley, our Supreme Court stated, "[w]hether the stairway here was included in the plaintiffs' lease and thus was under their CT Page 13335 control as tenants or was reserved by the defendant and so was under her control is essentially a question of intentions to be determined, in the absence of an expression in the lease, in the light of all the significant circumstances, such as the location of the stairway and the use actually made of it." Bentley v. Dynarski, supra, 150 Conn. 150-151. In Martel, the "Supreme Court noted that "[v]arious facts may be evidence of an intention by the lessor to retain control and so of an implied agreement to that effect." Martel v. Malone, supra, 138 Conn. 391. Repairs made by the landlord may be evidence of such control. Id.
Additional questions of fact are presented by the issue of whether Scagliola knew or should have known of the allegedly defective stairs. Here, as noted above, Amos claims that new stair treads had been placed over rotting wood, concealing the deteriorated condition from reasonable inspection. Scagliola disputes this, claiming that the covering material or "treads" was on the stairs when he bought the property in 1994. (See Defendant's Reply, pp. 10-11.) Scagliola's reply then proceeds to a detailed argument about what the photographs appended to Amos' affidavit purport to show. (See Defendant's Reply, pp. 12-14.) Whether or not the treads "looked new" is at issue. Scagliola's argument points out that material facts are in dispute. These are to be resolved by the trier of fact, not by summary adjudication.
Accordingly, summary judgment as to Count I is denied since there are material facts in dispute concerning negligence. Scagliola acknowledged in his memorandum of law, and at oral argument, that similar principles apply to the nuisance claim in Count II. (See Defendant's Memorandum of Law, pp. 10-11.) Under the circumstances, since there are material facts in dispute, the motion is denied as to that count as well.
Finally, Scagliola asserts that Count III concerning Scagliola's alleged failure to comply with a landlord's statutory duties in violation of § 47a-7 "must fail for the same reasons as those which were set forth in the First Count must fail." (Defendant's Memorandum of Law, p. 12.) That statute, in pertinent part, requires a landlord to comply with all applicable building codes and to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. . . ." General Statutes § 47a-7(a). "[I]n Panaroni v. Johnson, supra, 158 Conn. 100-102, [our Supreme Court] concluded that the trial court had not improperly charged the jury that certain provisions of the New Haven housing code imposed an affirmative duty on the landlord, beyond the requirements of the common law, the violation of which gave rise to civil liability." Gore v. People's Savings Bank, supra,235 Conn. 378. In Panaroni, as is the case here, the alleged defective part of the premises was an outside stairway. See Panaroni v. Johnson, supra, 158 Conn. 97. The jury in Panaroni was authorized to consider CT Page 13336 "whether the landlord had breached a common law duty to repair an area under his dominion and control or, in the event that the jury concluded that the stairway had not been under the landlord's control, whether the landlord had breached a duty created under the provisions of the housing code." (Footnote omitted.) Gore v. People's Savings Bank, supra,235 Conn. 378. In Gore, the Court further stated that "Panaroni makes clear that a statutory provision may impose on landlords additional duties the violation of which constitutes negligence per se." Id., 380. Here, the Hartford housing code, § 18-12, like the code at issue inPanaroni, provides that violators may be fined and/or imprisoned. Section 18-34 requires that every outside stair "shall be so constructed as to be safe to use and capable of supporting the load that normal use may cause to be placed thereon, and shall be kept in sound condition and good repair."
Thus, the factual issues raised by Amos in his affidavit, as discussed above, preclude the granting of summary judgment on the negligence per se claim set forth in Count 111. Whether or not Scagliola had actual or constructive notice of the alleged defective condition, as required inGore, are questions of fact to be resolved at trial. Accordingly, the defendant's motion for summary judgment as to Count III is denied. SeeGore v. People's Savings Bank, supra, 235 Conn. 384-385.
 IV. CONCLUSION
For the foregoing reasons, the motion for summary judgment is hereby denied. It is so ordered.
BY THE COURT,
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT